UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RAYMOND F. ODOM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.   1:05-CV-178 |
| | ) | |
| JAMES HERMAN, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION and ORDER**

**I. Introduction**

*Pro se* Plaintiff Raymond Odom, an African-American corporal in the Warrants Division

of the Allen County Sheriff's Department, brings this action under Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.  His initial Complaint (Docket # 1) launched

quite a few racial discrimination accusations towards Odom's ostensible employer, Sheriff James

Herman, but not so many against the other two Defendants, the Allen County Commissioners

and the Allen County Sheriff's Merit Board.

This paucity led the Defendants to file a Motion to Dismiss under Federal Rule of Civil

Procedure 12(b)(6) (Docket # 15), and that in turn led Odom to file a Motion to Amend his

Complaint to add a few more facts and a claim of racial discrimination under 42 U.S.C. §1981.[1]

(Docket ## 21, 25.)  The Defendants argue that Odom's proposed Amended Complaint does not

cure the deficiencies in his legal claims and oppose its filing on that basis.

---

[1] The parties have consented to the Magistrate Judge conducting any and all proceedings in this case,
including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 72.1(h).

The Commissioners and the Merit Board oppose adding a § 1981 claim by way of an Amended Complaint by arguing that: 1) Odom was not an Allen County employee or a Merit Board employee for purposes of that statute; 2) there are no allegations that Allen County did anything intentionally to Odom based on his race; and 3) because Odom's claim against the Merit Board stems from events occurring in 2002 and the statute of limitations for §1981 claims is two years, it is time-barred.

Essentially, the Commissioners and the Merit Board argue that Odom's Complaint and proposed Amended Complaint fail to state a claim under Title VII because: 1) Allen County was not his employer as defined by Title VII; 2) there is no allegation that the conduct he complains of was intentional or race-based; 3) neither the Merit Board nor Allen County were named as respondents in Odom's EEOC charge of discrimination; and 4) the conduct of the Merit Board about which Odom complains occurred more than 300 days prior to his charge of discrimination and thus is time-barred.

Odom argues that he is an employee of Allen County according to the Allen County Employee Handbook he received, and the Handbook is followed by the Sheriff's Department for officer disciplinary proceedings.  Odom also claims that because Allen County, through its Commissioners, is involved in myriad of ways with the operation of the Sheriff's department, he is an Allen County employee for purposes of both Title VII and §1981.

For the reasons we discuss, the two Motions to Amend and the Motion to Dismiss will each be GRANTED in part and DENIED in part.

## II. Factual Background[2]

---

[2] The following factual recitation combines allegations from both Odom's original Complaint and his proposed Amended Complaint.

2

Odom filed his initial Complaint against the Sheriff, the Merit Board, and the Commissioners on July 1, 2005. Odom alleges that he is and has been employed by the Sheriff since 1982 and is currently a corporal in the Warrants Division. (Compl., Legal Claim ¶¶ 2, 3). Odom describes the Sheriff as "an employer within the meaning of Title VII of the 1964, as Amended." (Compl., Legal Claim, ¶ 3).

Odom claims that in April 2000, he applied for a jail commander position but was denied an interview. (Compl., Facts ¶ 2.) In April 2002, Odom claims that the Sheriff posted a Sergeant position job in the civil division; Odom applied and purports to have been the only black officer to do so. (Compl., Facts ¶ 3.) Corporal David Royse, who ostensibly is white, also applied for the job despite the fact that he was ineligible, not having the necessary time in grade. (Compl., Facts ¶ 3.) According to Odom, on the day of the interviews for the position, the Merit Board changed its rule making Corporal Royse eligible for the position. (Compl., Facts ¶ 3.) Odom claims that this last-minute change in the rules adversely effected his promotion chances because the job then went to Royse. (Compl., Facts ¶ 3; Am. Compl., Additional Facts ¶ 10.)

Odom filed a grievance concerning Royse's ineligibility on April 16, 2002, but it was never addressed. (*See* Amended Compl., Additional Facts ¶ 9.)

Odom further complains that between June 2003 and September 2004, he has been reprimanded and treated differently than the Sheriff Department's white employees by various command officers and higher ranking officials in the Sheriff's Department. (Compl., Facts ¶¶ 4-17.) Odom's initial Complaint makes no allegations against the Commissioners, but his proposed Amended Complaint asserts that they "play an active role in the day-to-day activities

3

of the Sheriff's Department." (Am. Compl., Additional Facts ¶ 6.)  By this allegation, Odom apparently means the Commissioners are involved in such things as determining healthcare insurance, budgeting, and purchasing. (Am. Compl., Additional Facts ¶ 6.)  Moreover, Odom says that the Commissioners distributed to him and others in the Sheriff's Department an Employee Handbook that governs all civilian employees and some officer disciplinary actions. (Am. Compl., Additional Facts ¶ 6.)

Odom quotes from the employee definition section of the Employee Handbook:

> A person . . . working for a local Elected Official or in a department whose budget is reviewed and approved by the Allen County Council and a person who is working for a state official whose budget is reviewed and approved by the Allen County Council if said State Elected Official(s) has elected to have his/her office subject to this handbook.

(Amended Compl., Additional Facts ¶ 2.)[3]

This may have led to Odom's October 13, 2004, attempt to file an internal complaint based on Allen County's anti-harassment policy, but that was rejected by County officials because Odom was not considered a "covered" employee under the Handbook.  His complaint was then forwarded to the Sheriff's Department (*i.e.*, Captain Kite), but that did not get Odom anywhere either because he was told the Sheriff's Department and the Merit Board have no equal rights policy.

Apparently frustrated, Odom filed a charge of racial discrimination and harassment against the Sheriff with the Fort Wayne Metropolitan Human Relations Commission and the

---

[3] Odom attached two documents (Exhibits A and B) to his Brief in Opposition to the Motion to Dismiss that reinforce his contention that Allen County considered him an employee.  Since those documents add nothing to what Odom contends in his Amended Complaint, or which we may infer from his pleadings, the Court has not considered them and therefore has not converted the present motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(b)(6).

EEOC on December 21, 2004, naming only the "Allen County Sheriff's Department" as the respondent. The EEOC issued a Notice of Suit Rights on March 31, 2005.

### III. Standard on a Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must assume as true all well-pleaded facts set forth in the Complaint, construing the allegations liberally and drawing all reasonable inferences in the light most favorable to the plaintiff. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

Under the liberal notice pleading standard in federal civil actions, a plaintiff is entitled to the benefit not only of his allegations but of any other facts he might assert that are not inconsistent with his allegations. In responding to a motion to dismiss, a plaintiff may posit new facts in his brief, and so long as they are not inconsistent with his complaint, the Court must assume they are true for purposes of deciding the motion. *See, e.g.*, *Trevino v. Union Pac. R.R. Co.*, 916 F.2d 1230, 1239 (7th Cir. 1990) (reversing dismissal).

Defendants are entitled to dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Chaney v. Suburban Bus Div.*, 52 F.3d 623, 626-27 (7th Cir. 1995). Nevertheless, a plaintiff may still plead himself out of court if the complaint includes particulars that show he cannot possibly be entitled to the relief he seeks. *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995) (citing *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994)).

"[A]llegations of the *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520, (1972) (per curiam)). Accordingly, "*pro se* complaints are to be liberally construed." *Id.* (quoting *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988)).

### IV. Discussion

### A. Odom's Amended Complaint Fails to State a Claim Under § 1981 Against the Commissioners[4]

The Commissioners argue that it would be futile to allow Odom to amend his Complaint to add a §1981 claim against them because any such claim is meritless. Since it is unclear whether Odom is suing the Commissioners in their individual or official capacities, *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (citing *Hill v. Shelander*, 924 F.2d 1370 (7th Cir. 1991)), we will assume *arguendo* that he is alleging both.

### 1. Odom's § 1981 Individual Capacity Claim Against the Commissioners

It is doubtful that Odom is suing the Commissioners in their individual capacities under §1981 since he does not name them individually, but in any event, in order to do so he must allege: (1) that he is a member of a racial minority; (2) the Commissioners intended to discriminate against him on the basis of race; and (3) the discrimination concerned the making

---

[4] The current version of § 1981 reads in pertinent part as follows:

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . .  and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . . .
(b) 'Make and enforce contracts' defined
For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

and enforcing of a contract. *Nicol v. Lavin*, No. 03 C 6688, 2004 WL 1881786, at *3 (N.D. Ill. August 13, 2004) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).

As the Commissioners quickly observe, there is no mention of them in Odom's original complaint outside the caption. Accordingly, if the §1981 claim against them is to survive, it must be found within Odom's proposed Amended Complaint.  The Amended Complaint, however, offers scant amplification, stating only that the Commissioners "play an active role in the day-to-day activities of the Sheriff's Department" through County budgeting and purchasing. (Am. Compl., Additional Facts ¶ 6.)  This allegation falls far short of indicating that the Commissioners were individually involved with any of the employment situations Odom challenges. *Alexander v. Wisconsin Dept. of Health & Family Servs.*, 263 F.3d 673, 684 (7th Cir. 2001) (Plaintiff alleging violation of § 1981 must show that individuals were involved in some capacity with his disciplinary suspension.).

Odom's contention that the Commissioners distributed an Employee Handbook and that "some disciplinary actions towards officers originate from the Allen County Handbook," (Am. Compl., Additional Facts ¶ 6) also fails to state a §1981 claim. Odom becomes a little more specific when he contends that Lieutenant Keesler reprimanded him "from the Allen County Employee Handbook for Gross Insubordination" and that no other officer in the Warrants Division, except Odom, have been so disciplined by Lieutenant Keesler. (Am. Compl., Additional Facts ¶ 7.) This allegation, however, again does not implicate the Commissioners in their individual capacities because there is no contention that the Commissioners, by distributing the Handbook, which by its terms applies to most Allen County employees, intended to single out Odom for discriminatory treatment.

7

In short, Odom has failed to plead a *prima facie* case of discrimination under § 1981; he offers no facts indicating that any of the Commissioners individually interfered with his right to make and enforce a contract, or with any other protected activity under § 1981, and that they did so with the intent to discriminate based on race. *Johnson v. Principi*, No. 03 C 1367, 2004 WL 2044258, at *8 (N.D. Ill. September 3, 2004) (citing *Behnia v. Shapiro*, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997)) (individual liability can be found only where the individual defendant participated in the alleged discrimination against the plaintiff). Accordingly, since Odom's allegations fall far short of stating a §1981 claim against the Commissioners in their individual capacities, their Motion to Dismiss will be granted on this claim and Odom's Motions to Amend will be denied.

### 2. Odom's § 1981 Official Capacity Claim Against the Commissioners is Deficient Concerning a Failure to Promote, but Otherwise States a Claim

As we read Odom's proposed Amended Complaint, it centers on two accusations: 1) he was discriminatorily denied a promotion to Sergeant by the Merit Board and the Sheriff in April 2002; and 2) his September 2004 discipline was part of a campaign of racial harassment and was done under the Allen County Employee Handbook.

A suit against the Commissioners is tantamount to a suit against the County itself. *See Kentucky v. Graham,* 473 U.S. 159, 166-67 & n.14 (1985).  This principle is important to remember because Odom's proposed Amended Complaint first accuses the Sheriff and the Merit Board of discriminatorily rigging the Sergeant promotion process in April 2002.  This claim, to the extent it is against the County, is problematic since recovery against a governmental body under § 1981 may not be based on *respondeat superior*. *Smith v. Chicago School Reform Bd. of*

*Trs.*, 165 F.3d 1142, 1147 (7th Cir. 1999).

Moreover, the overarching principle here is that Odom must show that the Commissioners had an official policy or custom that was discriminatory. *Id.* at 1148-1149 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736-37 (1989)).  Stated simply, the body of law devised for analyzing § 1983 cases, such as *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978), apply as well to suits brought under § 1981. *Id.* Therefore, Odom must "show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (quoting *Jett*, 491 U.S. at 735-36).

The case law has identified three instances in which a municipality can be said to have violated the rights of a person because of its policy: (1) an express policy that, when enforced, causes a violation of the right to make contracts; (2) a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law"; or (3) an allegation that the injury was caused by a person with "final policymaking authority."  *Johnson v. Raba*, No. 93 C 2285, 1995 WL 42224, at *3 (N.D. Ill. Feb. 1, 1995) (citing *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994)) (citations omitted).

Even if we read Odom's allegations about his failed promotion attempt in 2002 expansively, they do not contend that the Commissioners enforce a policy or utilize a custom that effectively discriminates against, or thwarts the promotions of, black employees.  Therefore, Odom must rely on the third possibility, that the action of a policymaker caused his promotion opportunity to fail, and here the Commissioners emphatically argue that under Indiana law, *e.g.*,

*Delk v. Bd. of Comm'rs*, 503 N.E.2d 436, 440 (Ind. App. 1987), the Sheriff, and not the Commissioners, has final policymaking authority over the Sheriff's Department, including discipline and promotion matters. *See also Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995) (citing *Zook v. Brown*, 865 F.2d 887, 895 (7th Cir. 1989)).

Policymaker status, for purposes of analysis under either §1983 or §1981, is conferred by state or local law. *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999). And under Indiana law, only the Sheriff and the Merit Board have authority to promote or discipline Sheriff Deputies. *See, e.g*., Ind. Code §§ 36-8-10-3; 36-8-10-10(b)(d); 36-8-10-11.

This means that since the Commissioners never had the authority to discipline or promote Sheriff Deputies, they could not have delegated it either. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). Moreover, even if delegation of authority was the argument, "[t]he question is whether the promulgator, or the actor, as the case may be–in other words, the decisionmaker–was at the apex of authority for the action in question." *Id.* at 468, (citing *Eversole,* 59 F.3d at 716). This search for the entity with the ultimate authority under state law avoids lapsing back into some sort of *respondeat superior* theory of liability; "the cases limit municipal liability under section 198[1] to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority." *Id.* at 468 (citing *Partee v. Metro. Sch. Dist.*, 954 F.2d 454, 456 (7th Cir. 1992); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001)).

As noted earlier, the Indiana state legislature has determined that the Sheriff and the Merit Board, not the Commissioners, have sole promotion and discipline authority concerning

the Sheriff's Department, meaning that there is no higher authority. Consequently, it follows that

the Commissioners cannot be liable if the Merit Board or the Sheriff used their authority to

impair Odom's employment by making sure he was not promoted to Sergeant in April 2002.

Therefore, since this part of Odom's proposed Amended Complaint states no claim against the

Commissioners under § 1981, it would be futile to allow him to amend his Complaint to add one.

The second component of Odom's proposed Amended Complaint seeks to add a §1981

claim under a different theory. Odom asserts that in October 2004, he sought to administratively

file a complaint of racial discrimination, apparently as authorized under the County's Employee

Handbook. Odom says his claim was rejected by the County's Personnel Manager because he

"was not covered under the policies in the Allen County Handbook," and from there it was sent

to the Sheriff's Department, where it ostensibly languished because they have no "Equal Rights

and/or Civil Rights policy . . . [.]" (Am. Compl., Additional Facts ¶¶ 3, 4.)

Section 1981 prohibits racial harassment on the job and other forms of discrimination

occurring after the formation of a contract. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340,

346 (7th Cir. 1999) (citing *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1033 (7th Cir.

1998)).  Although the Commissioners cannot be held liable for the alleged harassment Odom

supposedly suffered in the Sheriff's Department prior to his complaint, as § 1981 liability may

not be based on *respondeat superior*, *Smith*, 165 F.3d at 1147, he seems to assert that they

should be liable for failing to respond to his complaint of harassment and that this violated §

1981.  But any such failure must be racially motivated, *see Gonzalez*, 133 F.3d at 1035, and

although this allegation is missing from Odom's proposed Amended Complaint, he does make it

in his sur-response brief. (*See* Sur-Resp. Br. 2) (asserting that the Human Resource Director and

11

his assistant, both of whom are white, discriminated against Odom based on race by not allowing him to file a discrimination complaint under the Employee Handbook); *Snyder v. Nolen*, 380 F.3d 279, 300 (7th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir.1997) ("[F]acts alleged in a brief in opposition to a motion to dismiss . . . as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint.")

Of course, the Commissioners suggest that the Personnel Manager did precisely the right thing because Odom is not a County employee, and therefore the Manager had no duty to accept his complaint. This may be true, but it fails to give Odom the inference to which he is entitled. For example, perhaps, as Odom suggests, the Sheriff does not have a policy and procedure to address racial discrimination complaints in his department and that they are to be channeled through the County. If that is the case, a race-based rejection by the Personnel Manager, to the extent he could be deemed a County policymaker on such matters, would arguably be actionable under § 1981 if the result was that Odom was subjected to even more racial harassment or discriminatory treatment.

Of course, this may not be Odom's theory at all, but at this stage he is not required to plead one, *U.S. v. Lewis*, 411 F.3d 838, 841-42 (7th Cir. 2005), and because on this reading his Amended Complaint is not futile, the Court will allow it to be filed, limited however, to his alleged racial harassment claim, *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 346 (7th Cir. 1999), and the alleged discriminatory enforcement of discipline.

**B. Odom's § 1981 Claim against the Merit Board Cannot be Dismissed**

12

Odom's proposed Amended Complaint against the Merit Board essentially alleges that in April 2002, he applied for a Sergeant's position, but at the last minute the Merit Board amended their rules to allow a previously ineligible white deputy to apply and then awarded him the promotion. The Merit Board does not contest these allegations and merely argues that Odom's § 1981 claim is barred by a two-year statute of limitations.

The Merit Board's argument overlooks the fact that Congress enacted a four-year statute of limitations for federal statutory claims arising after December 1, 1990. *Nicol v. Lavin*, No. 03 C 6688, 2004 WL 1881786, at *3-4 (N.D. Ill. August 13, 2004) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004)); 28 U.S.C. § 1658(a) (2002). The statute provides "a general 4-year limitations period for any federal statute subsequently enacted without one of its own." *Id.* (citing *Jones*, 541 U.S. at 381 n.14 (quoting *North Star Steel Co. v. Thomas*, 515 U.S. 29 (1995))) (internal quotations omitted).

The Civil Rights Act of 1991 amended § 1981 such that the statute prohibited racial discrimination in the terms and conditions of employment. *Id.* (citing *Jones*, 541 U.S. at 382); *see also* 42 U.S.C. § 1981(b) (2004)). As the Supreme Court held in *Jone*s, a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990–and therefore is governed by § 1658's 4-year statute of limitations–if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones*, 541 U.S. at 382. Therefore, in *Jones*, the four-year statute of limitations applied because the plaintiff's hostile work environment, wrongful termination, and failure-to-transfer claims were brought pursuant to § 1981 as amended by the Civil Rights Act of 1991; in other words, those causes of action were made possible by that Act. *Jone*s, 541 U.S. at 383. Discrimination claims under § 1981 that were actionable prior to the

13

amendment, however, are still governed by the two-year statute of limitations. *Jone*s, 541 U.S. at 383.

Thus, whether a two or four-year statute of limitations applies to Odom's failure to promote claim depends upon whether it was actionable before the 1991 amendment. *Cross v. Home Depot*, 390 F.3d 1283, 1288-89 (10th Cir. 2004). To answer that question we look to the case that inspired Congress to change § 1981 in the first place. *Patterson v. McClean Credit Union*, 491 U.S. 164 (1989). In *Patterson*, the Court held that a failure to promote is actionable under the then-existing version of § 1981 if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id.* at 185. The courts have since adopted a short-hand way of expressing the rule, which we now adapt to Odom's allegation: if a "new and distinct" contractual relationship between Odom and the Sheriff's department would have resulted from his promotion to Sergeant, the two year statute of limitations applies. *Cross*, 390 F. 3d at 1289; *Hithon v. Tyson Foods, Inc.*, 144 F. App'x 795, 799 (11th Cir. 2005); *Bradley v. W. & S. Fin. Group*, No. 2:05-CV-39, 2005 WL 2709282, at *4 n.3 (N.D. Ind. Oct. 20, 2005). Stated in the converse, if Odom's desired promotion would not have resulted in a new contractual relationship, his claim is actionable under the new version of § 1981, and the four year limitations period applies. *Cross*, 390 F. 3d at 1289. *Hithon*, 144 Fed. App'x. at 799; *Bradley*, 2005 WL 2709282, at *4 n.3.

Of course, on a motion to dismiss the Court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all reasonable inferences in a light most favorable to the plaintiff. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir.2000).  In doing so, we must deny the motion to dismiss as Defendants have not argued, let

14

alone produced, sufficient evidence to show beyond a doubt that a new and distinct contractual relationship would have been formed by Odom's promotion to Sergeant, triggering the two year statute of limitations. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999) (motion to dismiss, contending that the statute of limitations barred suit, may be granted "if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

### C. Odom's Title VII Claim

Both the Commissioners and the Merit Board argue that Odom's Title VII claim must be dismissed because he did not name either Allen County or the Merit Board in his Equal Employment Opportunity Commission (EEOC) charge of discrimination. The Merit Board further contends that Odom's EEOC charge is deficient because its conduct occurred more than 300 days prior to his charge of discrimination. Finally, the Commissioners argue that even if the EEOC charge is not deficient as to them, Allen County was not Odom's employer for purposes of Title VII, and moreover there is no allegation that the conduct he complains of was intentional or race-based.

### 1. Odom's EEOC Charge Provided the Commissioners and the Merit Board with Adequate Notice of the Claim

Under Title VII it is unlawful for an employer to discriminate against an employee based on race. 42 U.S.C. § 2000e-2(a)(1). Before a plaintiff may bring a Title VII suit in court, however, he must first file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Both the Merit Board and the Commissioners contend that Odom's Title VII claims must be dismissed because they were not named as his employer in his EEOC charge. This proposition

refers to the general rule that a party not named in the EEOC charge may not be sued under Title VII. *Henderson v. County of Will*, No. 97 C 3997, 1998 WL 325176, at *1 (N.D. Ill. June 8, 1998) (citing *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)).

Nevertheless, because many EEOC charges are filed without the assistance of counsel, they are to be construed with "utmost liberality." *Johnson v. County of Cook*, 864 F. Supp. 84, 86 (N.D. Ill. 1994) (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 906 (7th Cir. 1981)). Moreover, the reason for the naming requirement is "to notify the charged party of the alleged violation and also [to] bring the party before the EEOC, making possible effectuation of the [] primary goal [of 42 U.S.C. § 2000e-5(f)(1)] of securing voluntary compliance with its mandates." *Eggleston*, 657, F.2d at 905 (citations omitted). Thus, a defendant who was not named in the EEOC charge but who has actual notice of the charge, and was therefore provided with the opportunity to conciliate, may properly be named as a defendant in a Title VII suit. *EEOC v. Walsh Constr. Co.*, No. 03 C 3601, 2004 WL 1576698, at *1 (N.D. Ill. July 13, 2004).

Several facts give rise to the inference that the Commissioners had notice of Odom's charges. First, Odom filed an internal complaint with the Commissioners concerning the Sheriff Department's alleged discriminatory actions. *Henderson*, 1998 WL 325176, at *2 (finding that although plaintiff only named the county health department in her charge, the County had notice as plaintiff complained directly to county board members). Moreover, Odom named the "Allen County Sheriff's Department" in his EEOC charge, which is enough to provide the Commissioners with notice. *Id.* (by naming county health department, plaintiff sufficiently alluded to county); *Johnson*, 864 F. Supp. at 87 (by naming Cook County Department of

Corrections, plaintiff sufficiently alluded to Cook County).

Additionally, Odom sufficiently named the Merit Board in his EEOC charge to provide it with notice. While Odom did not name the Merit Board as an employer who discriminated against him in his EEOC charge, he identified the Merit Board in his factual narrative statement. This is enough to put the Merit Board on notice, as parties that are "sufficiently named or alluded to in the factual statement" can be properly named defendants. *Nolen v. South Bend Pub. Transp. Co.*, 99 F. Supp. 2d 953, 956 (N.D. Ind. 2000) (quoting *Eggleston*, 657 F.2d at 905) (finding defendant had notice of EEOC charges when specifically mentioned on page two of EEOC charge despite not being named as a respondent).

## 2. Odom's Title VII Claim Against the Merit Board is Barred Because He Failed to Timely File an EEOC Charge

The Merit Board has an additional argument, that Odom did not timely file a charge of discrimination because the events concerning its failure to promote Odom occurred in April 2002, yet he did not file a charge with the EEOC until December 21, 2004. In Indiana, a charge of racial discrimination must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). Here, Odom complains about events that occurred, at the latest, in April 2002, when he was denied the promotion to Sergeant and filed a grievance. Accordingly, unless he can bring himself within some exception, his complaint against the Merit Board must be dismissed as untimely. *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 720 (7th Cir. 2004).

The only thing Odom articulates as a possible exception is that he filed a grievance, and no action was taken. Perhaps this is an argument for equitable estoppel, but that only applies if a

defendant took "active steps to prevent the plaintiff from suing in time." *See, e.g., Lucas*, 367 F.3d at 722 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)).

However, the "pendency of a grievance, or some other method of collateral review of an employment decision does not toll the limitations period[]" for purposes of equitable estoppel. *Id.*; *see also Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551-52 (7th Cir. 1996); *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992). Consequently, the failure to address Odom's grievance by the Sheriff or the Merit Board does not equitably estop them from asserting the limitations defense. *Soigner*, 92 F.3d at 554 (finding no support for plaintiff's equitable estoppel argument even though defendant delayed plaintiff's internal review until the last day of the month in which he could file an EEOC charge).

Odom might also be trying to invoke another exception, equitable tolling, but that only applies if a plaintiff, "despite due diligence, is unable to obtain enough information to conclude that he may have a discrimination claim." *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001) (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)). Filing a grievance, however, actually cuts against Odom's application of equitable tolling, because it conclusively shows that he was aware that he had a discrimination claim. *See Beamon v. Marshall & Isley Trust Co.*, 411 F.3d 854, 855 (7th Cir. 2005); *see also Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) ("The pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period.")

Therefore, because it is unquestioned that Odom filed his EEOC charge concerning the Merit Board's conduct well after the 300 day limitations period, and because no estoppel or

tolling applies, his Title VII claim against the Board must be dismissed. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999).

### 3. Odom's Title VII Claim Against the Commissioners Survives

What is left of Odom's Title VII claim, at least against the Commissioners, is his allegation that he has been the victim of racial harassment and discriminatory write-ups. (*See* Compl. 4, Charge of Discrimination.)

The Commissioners start off by arguing that Title VII permits suits only against "employer[s]" and that under no circumstances can they be deemed to be Odom's employer. 42 U.S.C. § 2000e-2(a). An employer is defined as a "person engaged in an industry affecting commerce . . . who has fifteen or more employees . . . and any agent of such a person ." 42 U.S.C. § 2000e(b). In determining whether an employment relationship exists, the focus is on the employer's right to control the employee. *Solon v. Kaplan*, 398 F.3d 629, 632 (7th Cir. 2005).

The Commissioners contend that the Sheriff, not Allen County, "controls and directs the day-to-day activities of [the] Sheriff's department." This may or may not be true, but on a motion to dismiss we must accept as true the well-pleaded facts offered by Odom. First, Odom contends that Allen County considers him to be an employee. Moreover, Odom does not reach this conclusion in a vacuum; he says the Allen County Handbook defines him as an Allen County employee in this section:

> A person [*i.e.*, Odom] . . . working for a local Elected Official [arguably, the Sheriff] or in a department whose budget is reviewed and approved by the Allen County Council [again, arguably the Sheriff] and a person who is working for a state official whose budget is reviewed and approved by the Allen County Council if said State Elected Official(s) has elected to have his/her office subject to this handbook.

(Am. Compl., Additional Facts ¶ 2.) Moreover, Odom alleges employer-employee control in that

as a County employee he was disciplined for insubordination expressly under the Handbook's provisions. This is sufficient to withstand a motion to dismiss.

The Commissioners further argue that Odom failed to allege that the County did anything intentionally to him based on his race. A plaintiff need not, however, plead a *prima facie* case of discrimination under Title VII. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002); *Paxson v. County of Cook*, No. 02 C 2028, 2002 WL 1968561, at *1 (N.D. Ill. Aug. 23, 2002). Moreover, Odom does not have to specifically allege "intent" as it is implied by a claim of racial discrimination. *Bennet v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *Frazer v. Harris*, 266 F. Supp. 2d 853, 865 (C.D. Ill. 2003); *Kozlowski v. Fry*, No. 00 C 5296, 2001 WL 109545, at *4 (N.D. Ill. Feb. 5, 2001). Thus, it is enough that Odom alleges that "[he] believes [he is] being discriminated against on the basis of [his] race." (Compl. 4, Charge of Discrimination.)

Therefore, at this stage, Odom has alleged enough facts for the Court to infer that the County has some control over employees of the Sheriff's Department through the Handbook, or that perhaps the Sheriff was an agent of the County, 42 U.S.C. § 2000e(b); consequently, the Court cannot conclude beyond a doubt that Odom is not a County employee.[5]

### V. Conclusion

For the reasons given above, Defendants' Motion to Dismiss (Docket # 15) is GRANTED in part and DENIED in part. Plaintiff's Motion to Amend (Docket # 21) and Amended Motion to Amend (Docket # 25) are GRANTED in part and DENIED in part. The Amended Complaint is to be shown filed, but will go forward only as to Odom's (1) § 1981 and

---

[5] Aside from whether they are employers for purposes of Title VII, neither the Merit Board members nor the Commissioners can be held liable to Odom in their individual capacities. *See Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) (holding that a supervisor, in his individual capacity, does not fall within Title VII's definition of employer).

Title VII claims against the Commissioners in their official capacities for failing to respond to his complaint of racial harassment and discriminatory discipline, and (2) § 1981 claim against the Merit Board on the alleged failure to promote.

This matter is set for a further telephonic scheduling conference for November 28, 2005, at 3:00 p.m. The Court will initiate the call to the Plaintiff and Counsel. Representatives of the Defendants need not participate.


SO ORDERED.


Enter for November 7, 2005.


S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge